```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                   :
DAVID POSNER,
                                   :
              Plaintiff,
                                   :
      - against -
                                   :
SPRINT/UNITED MANAGEMENT COMPANY,
FRANK BROMBERG, and MICHAEL DESA,  :

              Defendants.          :

- - - - - - - - - - - - - - - - - -x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/21/2007

**OPINION**

05 Civ. 0284 (DC)

**APPEARANCES:**       CERTAIN & ZILBERG, PLLC
                      Attorneys for Plaintiff
                           By:  Michael A. Zilberg, Esq.
                      535 Fifth Avenue, 23rd Floor
                      New York, NY  10017

                      FISHER & PHILLIPS LLP
                      Attorneys for Defendants
                           By:  Christopher H. Mills, Esq.
                                Colleen P. Tandy, Esq.
                      Corporate Park III
                      580 Howard Avenue
                      Somerset, NJ  08873

**CHIN, D.J.**

In this employment discrimination case, plaintiff David Posner alleges that his former employer Sprint/Unlimited Management Company ("Sprint") and its employees Frank Bromberg and Michael Desa discriminated against him because of his age, in violation of federal, state, and city law. He also alleges that defendants defamed him through statements they made about his discharge. Defendants move for summary judgment. For the reasons that follow, the motion is granted.

## BACKGROUND

### A.   Facts

The facts are largely undisputed, and any conflicts in evidence have been resolved in favor of plaintiff.

#### 1.   Posner's Employment at Sprint

Posner was employed by Sprint in its Enterprise Sales Group in New York from in or about October 1984 until his dismissal on May 10, 2004.  (Am. Compl. ¶¶ 2, 5).  Posner held the title of Account Executive II, and received both a base salary and a commission on his sales.  (Id. ¶¶ 14-17).  At the time of his discharge, Posner was sixty years old.  (Id. ¶ 26).

In 1997, another employee repeated to Posner a remark made about Posner by Sprint vice president Dave Berry at a meeting Posner did not attend.  (Posner Dep. 135:21-136:9).  Berry reportedly said that Posner did not represent the future of Sprint.  (Id.).

#### 2.   The Toll-Free Lines

In 1992, Posner activated a toll-free 800 number under the account of one of his customers at that time, Landstar System, that connected to his home telephone.  (Am. Compl. ¶ 30; Posner Dep. 88:15-90:13).  Posner contends that he activated the line so that customers could reach him toll-free at home after office hours and on weekends, and that both his contact at Landstar System and his immediate supervisor at the time, Kevin McCullugh, were informed of, and consented to, this action.  (Am.

Compl. ¶¶ 30, 32; Mills Cert. Ex. G (Posner's statement to Spring
Corporate Security ("Posner Statement")); Posner Dep. 92:1-9).
Posner used the line for business with Landstar and for "personal
'emergency' use." (Am. Compl. ¶ 32). After activating the first
toll-free number, Posner eventually activated four additional
lines, that connected to his cellular phone, his son's home in
Texas, his daughter's home, and the home of a personal friend who
was attempting to adopt a child. (Id. ¶ 33; Posner Statement).

As the customers Posner serviced for Sprint changed
over the years, he transferred the lines he had opened to
different customer accounts. (Am. Compl. ¶ 33). On the day of
Posner's dismissal, he stated that he could not recall whether he
had asked for permission from customers other than Landstar to
add his lines to their account, but asserted at his deposition
that he did obtain permission for the line that connected to his
home, although not for the other lines. (Posner Statement;
Posner Dep. 101:23-102:5, 113:13-24, 119:10-13, 120:11-16). At
all times, Posner paid the usage bills. (Am. Compl. ¶ 34; Posner
Statement). Because the lines were billed under a client's
account, they were less expensive than they would have been had
Posner purchased them independently as a retail customer.
(Posner Dep. 122:20-23, 123:16-124:5).

In January 2004, Posner discussed the toll-free number
that rang at his home with Bromberg. (Am. Compl. ¶ 37). During
this conversation, Bromberg told Posner that this line was
"okay." (Id.).

- 3 -

### 3.   <u>Posner's Dismissal</u>

On April 21, 2004, an anonymous source alerted Sprint's
Ethics Helpline that Posner had opened toll-free lines for
himself and his family under a customer's account and was
receiving "a significant discount on . . . long distance." (<u>Id.</u>
¶ 36; Mills Cert. Ex. E).  On May 10, 2004, Posner was called to
a meeting with John Anninos and Gary Lenz, members of the Sprint
Corporate Security Department.  (Am. Compl. ¶ 38).  Anninos and
Lenz questioned Posner about the toll-free numbers.  (<u>Id.</u> ¶ 39).
Later that day, Posner signed a written statement, recounting
what he had told Anninos and Lenz, that was drafted by Sprint,
acknowledging his opening and use of the numbers.  (<u>Id.</u> ¶ 40).
Before signing the document Posner made some corrections to it.
(Posner Dep. 151:3-152:18).  In the document, Posner stated that
he had not asked his current customer's permission to transfer
his lines to its account.  (Posner Statement).

Following the discussion with Posner, Anninos conferred
in person or by phone with Desa, Katherine Downing of Sprint
Human Resources, Sprint Vice President of Sales Northeast Paul
Deering, and Susan Stucker from Sprint's legal department.
(Deering Dep. 19:9-12).  Posner's actions were considered theft
from the company, both because Posner received the benefit of a
customer's volume discount on the service and cost of the calls,
and because he was paid a commission on the billings from these
numbers.  (<u>See</u> Anninos Dep. 166:0-167:7).  After the meeting, the
final determination was that Posner had violated Sprint policy by

"tamper[ing] with costumer (sic) records" and "us[ing] customer's [accounts] to connect services to his home, family and friends," and consequently Posner had to be dismissed.  (<u>See</u> Deering Dep. 23:12-24:10, 25:11-17).

Later that afternoon Posner's employment was terminated by Desa, with Bromberg present.  (Am. Compl. ¶¶ 41-42).  Posner received no warnings prior to his dismissal.  (<u>Id.</u> ¶ 43).  On May 19, 2004, Posner received a notice from Sprint stating that he had been discharged "for cause":  Posner was fired because he had set up the toll-free numbers without permission, a violation of Sprint policy.  (<u>Id.</u> ¶ 45).  This statement was later repeated to at least one prospective employer of Posner, Global Crossing. (Posner Dep. 192:2-25).  Global Crossing hired Posner nevertheless.  (<u>Id.</u>).

The day after his dismissal, Posner wrote to Sprint Chairman and CEO Gary Forsee.  (Mills Cert. Ex. H).  In his e-mail message, Posner stated that he felt he was fired over "an indiscretion and error in jugement (sic)," and that in light of the circumstances, "[t]ermination [of his employment] seems a bit extreme."  (<u>Id.</u>).  He further wrote that he "would have accepted a suspension without pay for a period" as an appropriate response to his actions, but also recognized that "you might simply say that no one is immune from corporate policy," not even himself, an employee with twenty years' experience.  (<u>Id.</u>).  Although Posner did not believe that he had done anything wrong by activating the lines (Posner Statement; Posner Dep. 111:22-24),

- 5 -

in large part because the bills for these lines were minimal
(perhaps ten or fifteen dollars per month) (Posner Dep. 109:22-
110:6), he recognized that their existence on a customer's
account could impact, albeit perhaps only minimally, his
commission or bonus.  (<u>Id.</u> at 111:25-112:2, 113:25-116:2).  In
retrospect, he understood that others might view his actions as
improper. (<u>Id.</u>).

### 4.   <u>Posner's Knowledge of Other Dismissals at Sprint</u>

In Posner's affidavit in opposition to defendants'
summary judgment motion, he recounts two incidents, one occurring
sometime between 1989 and 1992 and one in 1997, of employees
under the age of forty who were disciplined for improprieties
including theft, but not discharged.[1]  (Posner Aff. ¶¶ 16-18).
Posner knows of the first incident because the employee worked in
his office, and at some point Anninos "recounted to [Posner] the
facts and circumstances" of that incident.  (<u>Id.</u> ¶ 17).  Posner
does not state how he knows of the second incident.  (<u>Id.</u> ¶ 18).
Finally, in his Equal Employment Opportunity Commission complaint
and deposition testimony in this case, Posner recounts five
individuals over forty who had been discharged by Sprint in the
preceding thirty months.  (Posner Dep. 167:5-180:23).  At his
deposition, however, Posner stated that he did not know with

---

[1]    In his deposition testimony, however, Posner also
recalled a "young lady" who was dismissed for abusing her Sprint-
issued credit card by charging $10,000 worth of personal expenses
and improperly charging limousine rides.  (Posner Dep. 39:4-
40:10).

certainty that age was a factor in any of those dismissals; for each dismissed employee he cited violations of Sprint company policy that the employee was alleged to have committed and that were offered by Sprint as the reason for termination of employment.  (Id.).

## B.   **Procedural History**

Posner filed his original complaint in this action on January 12, 2005, and an amended complaint on March 4, 2005. Posner alleges that Sprint discriminated against him because of his age in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 623(a)(1), and New York state and local law, in that he was discharged at age sixty, he received no warning prior to discharge, and he was not given an opportunity to make restitution and retain employment.  He also alleges that subsequent to his dismissal his customers were serviced by Sprint employees under forty who held lower positions than he did and thus received lesser compensation.  (Am. Compl. ¶ 46; Posner Aff. ¶ 19).  In his amended complaint Posner also asserts a defamation claim against defendants, alleging that their statements of the reasons for his termination were maliciously false and a pretext for age discrimination.

Defendants filed this motion for summary judgment on November 13, 2006.  Aside from the requisite Local Rule 56.1 statement of material facts and an affidavit, Posner submitted no materials in opposition to defendants' motion for summary judgment.  For the reasons set forth below, the motion is granted.

## DISCUSSION

### A.   Summary Judgment Standard

The standards governing motions for summary judgment are well-settled.  A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law.  See Fed R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).  Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  To create an issue for trial, there must be sufficient evidence in the record to support a jury verdict in the nonmoving party's favor.  See id.

To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).  The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed.  Nat'l Union Fire Ins. Co. v. Deloach, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted)).  Accordingly, it

is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." <u>BellSouth Telecomms., Inc. v. W.R. Grace & Co.</u>, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

**B.    Employment Discrimination**

    **1.    Applicable Law**

       The "ultimate issue" in any employment discrimination case is whether the plaintiff has met his burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason," <u>i.e.</u>, that there was discriminatory intent. <u>See</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 146 (2000); <u>Fields v. N.Y. State Office of Mental Retardation & Dev'l Disabilities</u>, 115 F.3d 116, 119 (2d Cir. 1997).

       **a.    McDonnell Douglas Framework**

       In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case usually relies on the three-step <u>McDonnell Douglas</u> test.  First, a plaintiff must establish a <u>prima facie</u> case of unlawful discrimination by showing that (1) he is a member of a protected class (2) who performed his job satisfactorily (3) but suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination.  <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 & n.13 (1973) (noting that elements of <u>prima facie</u> case vary depending on factual circumstances);

Stratton v. Dep't for the Aging, 132 F.3d 869, 879 (2d Cir. 1997)
(ADEA).

If the plaintiff establishes a prima facie case of
unlawful discrimination, "a rebuttable presumption of
discrimination arises and the burden then shifts to the defendant
to articulate a legitimate, nondiscriminatory reason for the
employment decision." Stratton, 132 F.3d at 879; see Reeves, 530
U.S. at 142-43.

If the employer articulates a nondiscriminatory reason
for its actions, the presumption of discrimination is rebutted
and it "simply drops out of the picture." St. Mary's Honor Ctr.
v. Hicks, 509 U.S. 502, 510-11 (1993) (citation omitted); see
James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).
The burden then shifts back to the plaintiff to show, without the
benefit of any presumptions, that more likely than not the
employer's decision was motivated, at least in part, by a
discriminatory reason. See Fields, 115 F.3d at 120-21; Connell
v. Consol. Edison Co., 109 F. Supp. 2d 202, 207 (S.D.N.Y. 2000).

To meet this burden, the plaintiff may rely on evidence
presented to establish his prima facie case as well as additional
evidence, which may include direct or circumstantial evidence of
discrimination. Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-
101 (2003); Harris v. City of New York, No. 03 Civ. 6167 (DLC),
2004 WL 2943101, at *2 (S.D.N.Y. Dec. 21, 2004). It is not
sufficient, however, for a plaintiff merely to show that he
satisfies "McDonnell Douglas's minimal requirements of a prima

- 10 -

facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." James, 233 F.3d at 157.  Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination.  See id.; Connell, 109 F. Supp. 2d at 207-08.

As the Second Circuit observed in James, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove -- particularly discrimination."  233 F.3d at 157; see Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir.1996) (to defeat summary judgment, plaintiff is obliged not just to produce "some" evidence, but must produce sufficient evidence to support a rational jury verdict in his favor); Lapsley v. Columbia Univ., 999 F. Supp. 506, 513-16 (S.D.N.Y. 1998) (advocating elimination of McDonnell Douglas test in favor of simplified approach focusing on ultimate issue of whether sufficient evidence exists to permit jury to find discrimination); see also Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases.  In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

### b.   **Verbal Comments and Stray Remarks**

Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff.  See Schreiber v. Worldco, LLC, 324 F. Supp. 2d 512, 518-19 (S.D.N.Y. 2004); Zhang v. Barr Labs., Inc., No. 98 Civ. 5717 (DC), 2000 WL 565185, at *4 (S.D.N.Y. May 8, 2000) (citing cases).  Often, however, an employer will argue that a purportedly discriminatory comment is a mere "stray remark" that does not constitute evidence of discrimination.  See, e.g., Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir. 1998) ("Stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination."); Campbell v. Alliance Nat'l Inc., 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) ("'Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision.'") (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992)).

In determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative "stray remark," a court should consider the following factors:  (1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at

- 12 -

issue; (3) the content of the remark, i.e., whether a reasonable
juror could view the remark as discriminatory; and (4) the
context in which the remark was made, i.e., whether it was
related to the decisionmaking process.  See Minton v. Lenox Hill
Hosp., 160 F. Supp. 2d 687, 694 (S.D.N.Y. 2001); Rizzo v. Amerada
Hess Corp., No. 99 Civ. 0168 (DNH), 2000 WL 1887533, at *5
(N.D.N.Y. Dec. 29, 2000) ("An employer's discriminatory
statements will rise above the level of stray remarks . . . when
the statements are: (1) made by the decision maker or one whose
recommendation is sought by the decision maker; (2) related to
the specific employment decision challenged; and (3) made close
in time to the decision."); Ruane v. Continental Cas. Co., No. 96
Civ. 7153 (LBS), 1998 WL 292103, at *8 (S.D.N.Y. June 3, 1998);
Mosberger v. CPG Nutrients, Civ. No. 01-100 (DWA), 2002 WL
31477292, at *7 (W.D. Pa. Sept. 6, 2002) ("Discriminatory stray
remarks are generally considered in one of three categories --
those made (1) by a non-decisionmaker; (2) by a decisionmaker but
unrelated to the decision process; or (3) by a decisionmaker but
temporally remote from the adverse employment decision.")
(internal quotations and citations omitted).

     Additionally, the Second Circuit has emphasized that
"[a]lthough evidence of one stray comment by itself is usually
not sufficient proof to show age discrimination, that stray
comment may 'bear a more ominous significance' when considered
within the totality of the evidence."  Carlton, 202 F.3d at 136
(quoting Danzer, 151 F.3d at 56); see also Schreiber, 324 F.

Supp. 2d at 522-23.  "Even 'stray remarks in the workplace by persons who are not involved in the pertinent decision making process . . . may suffice to present a prima facie case,' provided those remarks evidence invidious discrimination." Belgrave v. City of New York, No. 95 Civ. 1507 (JG), 1999 WL 692034, at *29 (E.D.N.Y. Aug. 31, 1999) (quoting Ostrowski, 968 F.2d at 182); see also Malarkey v. Texaco, Inc., 983 F.2d 1204, 1210 (2d Cir. 1993) (holding that statements made by non-decisionmakers were properly received "because they showed the pervasive corporate hostility towards [plaintiff] and supported her claim that she did not receive a promotion due to her employer's retaliatory animus"); Warren v. Halstead Indus., Inc., 802 F.2d 746, 753 (4th Cir. 1986) (holding that evidence of a "general atmosphere of discrimination," harassment, or threats is "relevant to the determinations of intent and pretext).

## 2. **Application**

Claims of employment discrimination brought under the ADEA are subject to the same burden-shifting analysis as claims brought under Title VII, as set forth in McDonnell Douglas Corp., 411 U.S. at 802.  See Stratton, 132 F.3d at 879.  The McDonnell Douglas framework also applies, in general, to state and local discrimination claims.  See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000); Sullivan v. Newburgh Enlarged Sch. Dist., 281 F. Supp. 2d 689, 707 (S.D.N.Y. 2003); Landwehr v. Grey Adver., Inc., 622 N.Y.S.2d 17, 18 (1st

Dep't 1995).  Accordingly, I discuss the ADEA, state, and local discrimination claims together.

I assume for purposes of this motion that Posner has made a prima facie showing of age discrimination required by McDonnell Douglas.  Sprint has met its burden of articulating non-discriminatory reasons for its employment actions and decisions, as it has offered non-discriminatory explanations for its employment decisions.  See Stratton, 132 F.3d at 879; see also Reeves 530 U.S. at 142-43.  Simply put, Sprint contends that it fired Posner because he violated company policy by (1) activating toll-free numbers under customers' accounts, (2) taking advantage of discounted rates without the fully informed permission of Sprint or its customers, and (3) misleadingly increasing his sales so as to increase his own commissions and bonus, albeit incrementally.

Accordingly, I proceed directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find that he was discriminated against because of his age.  I do so by evaluating first plaintiff's evidence, then defendants' evidence, and finally the record as a whole, keeping in mind the elusiveness of proof of discrimination and the principle that the jury is "entitled to view the evidence as a whole."  Stern v. Trs. of Columbia Univ., 131 F.3d 305, 314 (2d Cir. 1997); see also Siano v. Haber, 40 F. Supp. 2d 516, 520 (S.D.N.Y.), aff'd mem., 201 F.3d 432 (2d Cir. 1999).

###### a.   **Plaintiff's Evidence**

Plaintiff offers the following evidence in support of his age discrimination claim:

First, plaintiff was sixty years old and had been with Sprint nearly twenty years when Sprint dismissed him.  The ADEA protects employees over age forty.  See 29 U.S.C. § 631(a).

Second, plaintiff claims to know of two employees who were caught stealing from Sprint who were reprimanded and required to make restitution, but not fired.  (Posner Aff. ¶¶ 16-18).  One of the incidents is based on hearsay, and Posner's knowledge of the other is unexplained.  (Id. ¶ 18).  Even if Posner could demonstrate his personal knowledge of the second event, both events are so remote in time from his own discharge that they are not probative.  Hence, these two purported incidents will not be considered.

Third, plaintiff offered that, including himself, six employees over forty had been fired from Sprint in the prior thirty months.  (Posner Dep. 167:5-180:23).  As an initial matter, it is not clear that Posner has personal knowledge of these discharges.  Even if he does, he testified at his deposition that he has no knowledge that any of the other discharged employees had been fired because of their age.  (Id.).  Moreover, the significance of six employees over a thirty-month period is simply not clear, as the record does not indicate how many employees Sprint had during that time and how many, if any, employees under age forty were fired.  Plaintiff simply has not demonstrated whether six is statistically meaningful.

Fourth, plaintiff relies on a remark he was told had been made about him by a Sprint vice president at a meeting in 1997. (Posner Dep. 135:21-136:9). Posner did not attend this meeting, and therefore this remark is also hearsay and therefore inadmissible. In any event, the isolated comment does not show that Sprint fired plaintiff because of his age. See Campbell, 107 F. Supp. 2d at 247. The remoteness of the remark, the fact that it was made by a non-supervisor, and the words themselves all support the conclusion that this remark does not evidence age discrimination. See id. (derogatory comment remote in time to termination not enough to defeat a motion for summary judgment); Minton, 160 F. Supp. 2d at 694 (derogatory comment made by non-decision maker not connected to plaintiff's discharge falls into "stray remark" category). In addition, even if this comment could be considered as betraying an ageist disposition, it is a classic stray remark uttered seven years before the termination decision and is not sufficient to defeat summary judgment. See Danzer, 151 F.3d at 56 (noting that a stray comment, without more, "cannot get a discrimination case to a jury").

In the end, the only probative, admissible evidence of age discrimination offered by Posner is that he was sixty years old and had been with Sprint nearly twenty years when he was discharged.

### b.   **Defendants' Evidence**

Defendants offer the following evidence in support of their motion for summary judgment:

The Sprint Ethics Helpline received information that Posner had activated toll-free numbers on a customer's account and was receiving a discount on long distance service because of this.  (Mills Cert. Ex. E).  Anninos questioned Posner about the numbers, and Posner admitted that he had activated the lines. (Posner Statement).  He did this not only for a phone in his own home, but also for his cell phone, his son's home, his daughter's home, and the home of a personal friend.  (Id.).  Not only did he get the advantage of a discounted rate for himself, his son, his daughter, and a friend, because these lines were opened in his customers' accounts, he also received credit for these "sales" toward the calculation of his commission.  None of this is disputed, and all of it was in violation of Sprint company policy.  (Deering Dep. 23:12-24:10, 25:11-17).

### c.   <u>**The Record As a Whole**</u>

Considering the record as a whole, and resolving all conflicts in evidence and drawing all reasonable inferences in plaintiff's favor, I conclude that no reasonable jury could find that plaintiff's age was a factor in his dismissal.

The only admissible, probative evidence of age discrimination is the bare fact that plaintiff was sixty years old when he was discharged by Sprint after a long career.  By itself, this evidence is not enough to defeat summary judgment. See <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 517 (holding that in a discrimination case, plaintiff must prove that firing was the result of intentional discrimination); <u>Van Zant</u>, 80 F.3d at 714

("some evidence" not enough); <u>Pullin v. Potter</u>, No. 01 Civ. 2641
(DC), 2003 WL 1907203, at *4 (S.D.N.Y. Apr. 18, 2003) (granting
summary judgment when plaintiff's only evidence in support of age
discrimination was "the mere fact that he was in the protected
age category").  Posner also suggests that he was treated in an
unduly harsh manner, contending that dismissal was too severe a
punishment for what he did, suggesting that Sprint should have
just suspended him or docked his pay.  But Posner has presented
no concrete evidence to show that other, younger employees
engaged in similar conduct and were not fired.  Moreover, his
conduct -- which he admits to -- was quintessentially dishonest,
and no reasonable jury could find, on the record before the
Court, that Sprint seized on this conduct as a mere pretext to
hide age discrimination.

In contrast, Sprint has presented overwhelming evidence
that plaintiff was not discriminated against because of his age.
Posner was first hired by Sprint at age forty, the age at which
ADEA protections begin.  <u>See</u> 29 U.S.C. § 631(a).  Indeed, Posner
was within the ADEA protected class for the entire duration of
his employment with Sprint.  Only when Sprint was alerted to,
investigated, and discovered Posner's violation of company policy
did it fire him.

Posner has not met his burden of showing that more
likely than not he was discriminated against because of his age.
<u>See</u> <u>Fields</u>, 115 F.3d at 120-21; <u>Connell</u>, 109 F. Supp. 2d at 207.
After months of discovery, the only evidence Posner offered in

- 19 -

opposition to defendants' summary judgment motion was his own sworn affidavit, which relied largely on speculation and surmise. In the face of the overwhelming evidence from Sprint that Posner was fired for violations of company policy, Posner's affidavit and the arguments in his attorney's memorandum of law do not raise a genuine issue of material fact requiring a trial.  Posner has failed to meet his burden and his employment discrimination claims must be dismissed.

## C.  __Defamation__

To state a claim for defamation under New York law, "the claimant must allege facts sufficient to support a finding of a published statement concerning the claimant that is both false and defamatory." Cytyc Corp. v. Neuromedical Sys., Inc., 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998).  Ultimately, New York law requires a libel plaintiff to prove five elements:  "(1) a written defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) defendant's fault, varying in degree depending on whether plaintiff is a private or public party; (4) falsity of the defamatory statement; and (5) injury to plaintiff." Meloff v. New York Life Ins. Co., 240 F.3d 138, 145 (2d Cir. 2001) (citation omitted).  Under New York law "it is 'fundamental that truth is an absolute, unqualified defense to a civil defamation action,' and 'substantial truth suffices to defeat a charge of libel.'" Weber v. Multimedia Entertainment, Inc., No. 97 Civ 0682 (JGK), 2000 WL 526726, at *10 (S.D.N.Y. May 2, 2000) (quoting Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 301 (2d Cir.1986)).

- 20 -

Posner bases his defamation claim on his allegation that Sprint's proffered reason for his termination was pretextual, and that he was actually terminated because of his age.  As discussed above, Posner has offered scant evidence to support his age discrimination claim.  Moreover, it is indisputably true that he engaged in improper conduct, conduct that surely justified Sprint's decision to terminate his employment.  Accordingly, as Posner has not produced sufficient evidence from which a reasonable jury could conclude that any statements made by Sprint about him are false, his defamation claim fails as a matter of law.[2]  See Weber, 2000 WL 526726, at *10.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted.  The Clerk of the Court shall enter judgment dismissing the case, with prejudice, and with costs but without fees.

SO ORDERED.

Dated:    New York, New York
          March 21, 2007

DENNY CHIN
United States District Judge

---

[2]    Additionally, the Court notes that the statement made about Posner's termination had no impact on his ability to successfully obtain employment with Global Crossing.  (See Posner Dep. 192:2-25).

- 21 -